IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>TIM DeCHRISTOPHER,<br><br>    Defendant. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:09-CR-183<br><br>Judge Dee Benson |

This matter is before the court on the government's motion in limine to bar defendant Tim DeChristopher ("DeChristopher") from presenting a necessity defense at trial, including any evidence in support of such a defense. (*See* Dkt. No. 12.) A hearing on the motion was held on September 25, 2009. At the hearing, the government was represented by John W. Huber and Scott B. Romney. DeChristopher was represented by Ronald J. Yengich, Patrick Shea and Elizabeth Hunt. After taking the motion under advisement, the court has further considered the law and facts relating to the motion. The court has also considered DeChristopher's recently filed Written Proffer Of Choice Of Evils Defense and Request For Evidentiary Hearing, the government's response to that submission, and DeChristopher's reply memorandum. Being fully advised, the court renders the following Memorandum Opinion and Order.

## BACKGROUND

Each United States Bureau of Land Management ("BLM") state office is required to conduct a competitive oil and gas lease sale at least four times a year if public lands are available for leasing and the BLM receives nominations for leasing. *See* 30 U.S.C. § 226(b)(1)(A); 43 C.F.R. § 3120.1-2. Interested members of the public and industry nominate parcels for competitive lease by sending letters of interest to a particular BLM state office that identifies

specific tracts of land that are desired for lease. *Id*. § 3120.3. Prior to conducting a quarterly lease sale, the Utah BLM office prepares a preliminary list of oil and gas lease parcels that may be offered at that sale. Individual BLM field offices then determine whether the issuance of a particular oil and gas lease is consistent with a governing Resource Management Plan and its accompanying environmental impact statement. Once these determinations are made, the Utah BLM office prepares a sale list and notifies the public that a competitive lease sale will take place no less than 45-days after the date of posting. 43 C.F.R. § 3120.4-2. The Utah BLM office generally provides a 30-day protest period where any member of the public may "protest" the inclusion of certain parcels in a particular lease sale. *See* 43 C.F.R. §§ 4.21 and 3120.1-3.

The lease sale itself is a public auction with leases sold to the highest bidder. 43 C.F.R. § 3120.5. If not acquired on the day of the sale, leases remain available for purchase at a reduced rate over the next two years. *Id*. § 3120.6. The BLM completes the leasing transaction by "issuing" the lease to the high bidder after the lease sale. *Id*. § 3120.5-3. If an oil and gas lease parcel is protested by a member of the public, the lease is not issued until the protest is resolved.

### A. The December 19, 2008, Lease Sale

On November 4, 2008, the BLM posted a final list of oil and gas lease parcels for a lease sale on December 19, 2008. During the 30-day protest period that followed, the BLM received approximately 1,600 protests including at least one protest for every proposed parcel on the sale list. In addition, on December 17, 2008, a coalition of environmental groups filed a federal lawsuit in the District of Columbia seeking to prevent the issuance of leases included in the lease sale. *See Southern Utah Wilderness Alliance v. Allred*, No. 08-2187, 2009 WL 765882, at *1-2 (D.D.C. Jan. 17, 2009).

2

On December 19, 2008, DeChristopher went to the Utah BLM office in Salt Lake City, Utah.  Outside the BLM office, environmental activists organized a protest.  Inside the office, DeChristopher registered to bid on oil and gas leases.  In order to register as a bidder, DeChristopher was required to fill out and sign a "Bidder Registration Form."  The Bidder Registration Form required DeChristopher to certify that: (1) he was a good-faith bidder, (2) he had the intention to acquire an oil and gas lease on the offered lands, (3) a winning bid constituted a legally binding commitment to accept the lease, and (4) in the event of winning a bid, he was obligated to pay the BLM by the end of the day a percentage of the lease's purchase price, whether or not the lease was subsequently issued.  The Bidder Registration Form also informed DeChristopher of the criminal consequences of tampering with the bidding process.

At the lease sale, DeChristopher placed bids on dozens of oil and gas leases.  Initially, DeChristopher would drive up the bid price and then pull out before he had won the bid.  But then he began to bid on the oil and gas leases until he won the bid.  In total, DeChristopher won fourteen leases totaling $1.7 million.  DeChristopher claims he acted to combat the "government's violation of its own laws and regulations and the consequential exacerbation of global warming and climate change, and destruction of irreplaceable natural and cultural resources."  (*See* Def.'s Written Proffer 5-7.)

**B.  Post-offense Events Related to the December Lease Sale**

On January 17, 2009, the United States District Court for the District of Columbia granted a temporary restraining order preventing the BLM from issuing seventy-seven of the leases that were sold at the December lease sale.  *See Allred*, 2009 WL 765882, at *1.

On February 4, 2009, the newly installed Secretary of the Interior, Kenneth Salazar, canceled the winning bids on the seventy-seven disputed leases and returned $6 million of

payments that the BLM had collected from their sale.  Included among the seventy-seven parcels that Secretary Salazar canceled were eleven of the fourteen leases that DeChristopher "won." The other three leases were unaffected by the Secretary's order.

On April 1, 2009, a grand jury returned a two-count indictment against DeChristopher, charging him with (1) violating the Federal Onshore Oil and Gas Leasing Reform Act, and (2) providing false statement.  Both before and after the return of the indictment against him, DeChristopher and his actions at the BLM lease sale received considerable attention by the print and broadcast media.  He gave numerous interviews, at times with his lawyer standing at his side, in which he declared that he was justified in his actions because of his concerns about the environment.  In these statements DeChristopher indicated that he would defend his behavior as necessary or legally justified. *See* Ronald Yengich, Attorney for DeChristopher*, Religion & Ethics Newsweekly*: *Civil Disobedience* (PBS television broadcast Mar. 20, 2009) ("the primary defense would be what lawyers would call the "choice of evils" defense, and that's an historic defense about someone who is basically protesting a government action, and they are saying that I did this, even if it may be technically against the law, because there is a greater evil out there."); Patrick Shea, Attorney for DeChristopher, Interview by Doug Fabrizio with Tim DeChristopher and Patrick Shea, in Salt Lake City, Utah (Apr. 28, 2009) ("we would like a courtroom presentation of the scientific fact of global warming. . . . There is a little used defense called the lesser of two evils. . . . Essentially what it says is if a citizen faces a choice between two evils and picks the latter, the lesser, the jury or a judge can find them not guilty of the crime. . . . That is one of the things we are going to be doing."), *available at* http://www.publicbroadcasting.net.  In reaction to these various public pronouncements, on May 14, 2009, the government filed a motion in limine seeking to bar DeChristopher from presenting a necessity defense at trial,

including any evidence in support of such a defense.  The government contends that DeChristopher cannot meet any of the four required elements of the necessity defense, and failure to meet even one of the elements bars the evidence from trial as a matter of law. DeChristopher argues that this court should not bar the necessity defense because the Constitution guarantees him a meaningful opportunity to present a complete defense and because the evidence when viewed through the "eyes of one reasonable juror," would support the defense.

## **DISCUSSION**

### A.  **Legal Standard**

A criminal defendant has the right to have a jury resolve disputed factual issues.  *See Sandstrom v. Montana*, 442 U.S. 510, 523 (1979).  However, where the evidence, even if believed, does not establish all of the elements of a legal defense, the court need not submit the defense to a jury.  *See United States v. Bailey*, 444 U.S. 394, 416-17 (1980).  Accordingly, the admissibility of the necessity defense can be determined by a motion in limine.  *See United States v. Patton*, 451 F.3d 615, 638 (10th Cir. 2006); *United States v. Aguirre-Torres*, 3 Fed. Appx. 852, 854 (10th Cir. 2001); *United States v. Seward*, 687 F.2d 1270, 1277-78 (10th Cir. 1982), *cert. denied*, 459 U.S. 1147 (1983). The sole issue before this court is whether the evidence, as described in DeChristopher's written proffer, is insufficient as a matter of law to support the necessity defense.  *See Patton*, 451 F.3d at 638; *Seward*, 687 F.2d at1276.  If it is, then the court should exclude the defense and the evidence offered in support.  *See Patton*, 451 F.3d at 638; *Seward*, 687 F.2d at1276.

**B.  The Necessity Defense**

Successful use of the necessity defense requires the defendant to prove that: (1) he was faced with a choice of evils and chose the lesser evil; (2) he acted to prevent imminent harm; (3) he reasonably anticipated a direct casual relationship between his conduct and the harm to be averted; and (4) he had no legal alternatives to violating the law.  *United States v. Turner*, 44 F.3d 900, 902 (10th Cir. 1995); *see also United States v. Schoon*, 971 F.2d 193, 195 (9th Cir. 1991).  If a defendant's offer of proof is deficient with regard to any of the four elements, the defense of necessity fails.  *See Turner,* 44 F.3d at 902.  This case does not qualify for the necessity defense.

1.  Choice of Evils

The necessity defense requires that a defendant prove that he was faced with a choice of evils and chose the lesser evil.  *See Turner*, 44 F.3d at 902.  DeChristopher's written proffer asserts that his actions were a lesser evil compared to the greater evil of the government's violation of the law surrounding the BLM lease sale and the  "consequential exacerbation of global warming and climate change, and destruction of irreplaceable natural and cultural resources."  (*See* Def.'s Written Proffer 5-7.)  The court finds that DeChristopher fails to satisfy the "choice of evils" requirement for at least two reasons.

First, a harm or evil that may or may not occur is insufficient for purposes of the necessity defense.  *See Schoon*, 971 F.2d at 198 (indicating that harms that are insufficiently concrete are not cognizable as harms for purposes of the necessity defense); *United States v. May,* 622 F.2d 1000, 1009 (9th Cir.) ("[defendant] must be able to show some direct harm . . . not a theoretical future harm to all of us that may or may not occur."), *cert. denied*, 449 U.S. 984 (1980).

6

Second, the court agrees with the United States Court of Appeals for the Ninth Circuit in that the court does "not sit to render judgments upon the legality of the conduct of the government at the request of any person who asks us to because he happens to think that what the government doing is wrong. . . .  To [do so] would . . . put [the court] in the position of usurping the functions that the Constitution has given to the Congress and to the President."  *May*, 622 F.2d at 1009; *see also United States v. Kabat*, 797 F.2d 580, 591 (8th Cir. 1986) ("the necessity defense was never intended to excuse criminal activity by those who disagree with the decisions and policies on the lawmaking branches of government; in such cases the 'greater harm' sought to be prevented would be the course of action chosen by elected representatives, and a court in allowing the defense would be making a negative political or policy judgment about that course of action.").  Accordingly, DeChristopher's necessity defense fails because he did not face a definite and/or cognizable choice of two evils.

2.  Imminent Harm

The necessity defense requires the defendant to show that the harm to be avoided was so imminent that, absent the defendant's criminal acts, the harm was certain to occur.  *See Kabat*, 797 F.2d at 591 (*citing Bailey*, 444 U.S. at 410).  In DeChristopher's written proffer, he asks the court to relax the "imminent harm" requirement.  The court declines to do so.  The term "imminent harm" connotes a real emergency or crisis.  *See Seward*, 687 F.2d at 1276.  Even assuming arguendo that the BLM's lease sale was "evil", the evidence does not support a finding of imminent harm because issuance of the oil and gas leases offered at the BLM lease sale was not certain to occur.  There were approximately 1,600 protests filed including at least one for every parcel offered for lease.  The BLM does not issue an officially protested lease until after the protest has been investigated and affirmatively resolved.  This can be a lengthy process with

an uncertain outcome.  Furthermore, unlike the destructive forces of fire referred to by DeChristopher in his written proffer, the suggested consequences of the BLM lease sale were not certain to occur or immediately dangerous.  Thus, the court finds that DeChristopher's necessity defense fails because the evidence does not establish "imminent harm."

### 3.  Sufficient Causal Relationship

A defendant must demonstrate that he reasonably anticipated a direct casual relationship between his actions and the harm to be averted.  *See Turner*, 44 F.3d at 902.  DeChristopher attests that he reasonably anticipated his actions would "thwart" the BLM's unlawful lease sale, and also avert its consequential exacerbation of global warming and climate change, and its destruction of irreplaceable natural and cultural resources.  However, DeChristopher fails as a matter of law to establish that driving the bid price up on some parcels and winning only fourteen of over a hundred parcels sold could be reasonably anticipated to directly stop the BLM's "unlawful" lease sale and avoid its purported consequences.  Unlike a person demolishing a home to create a firebreak, DeChristopher's actions were more akin to placing a small pile of dirt in the fire's path.  The court finds that DeChristopher's necessity defense fails because he cannot establish that his actions would directly bring about the ends he claims to have sought.

### 4.  The Availability of Other, Legal Alternatives to Violating the Law

As long as defendant's perceived "crisis" permitted a selection from among several solutions, some of which did not involve criminal acts, the necessity defense must fail.  *Seward*, 687 F.2d at 1276.  Here, DeChristopher could have filed protests during the 30-day protest period.  DeChristopher could have also demonstrated with the environmental activists outside the BLM office.  Moreover, DeChristopher could have involved himself with the coalition of environmental groups that filed a federal lawsuit in the District of Columbia that eventually

precluded the issuance of certain leases included in the BLM lease sale.  Consequently, the court finds that DeChristopher's necessity defense fails because there were reasonable, legal alternatives open to DeChristopher other than his alleged criminal acts.[1]

## CONCLUSION

For the foregoing reasons, the court finds that the evidence is insufficient as a matter of law to support the necessity defense.  Accordingly, the government's motion in limine to bar DeChristopher from presenting a necessity defense at trial, including any evidence in support of such a defense is GRANTED.  Furthermore, because the evidence as proffered is insufficient as a matter of law to support a necessity defense, DeChristopher's request for an evidentiary hearing is DENIED.


IT IS SO ORDERED.

DATED this 16th Day of November, 2009.


Dee Benson
United States District Judge

---

[1]DeChristopher's claim that he had no legal alternatives because he had none "at the moment of truth in the auction" is without merit. Impatience with or failure to take less visible and more time-consuming alternatives does not constitute an absence of legal alternatives.  *See United States v. Dorrell*, 758 F.2d 427, 431 (9th Cir. 1985).  Moreover, a defendant's subjective belief as to available legal alternatives is not determinative.  *See Aguirre-Torres*, 3 Fed. Appx. at 854.