RONALD J. YENGICH (#3580)
ELIZABETH HUNT (#5292)
YENGICH, RICH & XAIZ
175 East 400 South, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 355-0320
Emails: ronaldy333@aol.com, elizabeth.hunt@comcast.net

PATRICK A. SHEA (#2929)
PATRICK A. SHEA P.C.
215 SOUTH STATE, SUITE 200
SALT LAKE CITY, UTAH 84111
Telephone: (801)305-4180
Email: pas@patrickshea.com

IN THE UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | SENTENCING MEMORANDUM |
| Plaintiff, | Case No. 2:09 CR 183 DB |
| vs. | Judge Dee Benson |
| TIM DeCHRISTOPHER, | |
| Defendant. | |

Tim DeChristopher, by and through counsel, Ronald J. Yengich, Elizabeth Hunt and Patrick A. Shea, hereby submits this sentencing memorandum.

The author of the presentence report is commended for his efforts to craft a

balanced and thorough report. As to the areas in the report wherein the author gave the Court alternative guidelines based on varying choices the Court might make, DeChristopher explains his positions.

    I.    DeChristopher Caused No Loss to the Government or Anyone Else.

In selecting the guideline range, the PSI suggests that the base offense level of 6 should be increased 12 points under United State Sentencing Guideline 2B1.1. In calculating loss, the PSI includes $139,683.28 in administrative costs to the BLM in holding the auction, and $166,794.50, the price of the three leases won by DeChristopher at the auction that were not nullified by Secretary of the Interior Salazar. PSI page 21, paragraph 53. The PSI also provides alternative guidelines premised on the theories that DeChristopher caused no loss, id. at page 33-34, or that DeChristopher should be held accountable for the total price of the leases he won, regardless of their having been nullified by the Department of the Interior. PSI page 32.

It is respectfully submitted that the guidelines calculation should be premised on the correct theory, that DeChristopher caused no loss. Under comment 3 to Guideline 2B1.1, to constitute a loss that effects a criminal

2

sentence, the loss must be the result of the offense.[1] Defendants are not held responsible for damages caused by other actors or factors. Cf. <u>United States v. Maldonado-Montalvo,</u> 356 F.3d 65 (1$^{St}$Circuit 2003) (recognizing propriety of downward departure if loss calculation overstates seriousness of offense, but rejecting for lack of evidence claim of multiple or alternate causation of losses under former guideline 2F1.1).

DeChristopher is not responsible for the administrative costs of holding the auction, because the auction was not held at his behest or caused by him at all. Rather, it was an event held by the federal government. Expenses incurred by the

---

[1] Note 3 states in relevant part,

   3. Loss Under Subsection (b)(1).--This application note applies to the determination of loss under subsection (b)(1).

(A) General Rule.--Subject to the exclusions in subdivision (D), loss is the greater of actual loss or intended loss.
(i) Actual Loss.--"Actual loss" means the reasonably foreseeable pecuniary harm that resulted from the offense.
(ii) Intended Loss.--"Intended loss" (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value).

Government before DeChristopher was involved are not fairly attributable to him. Cf. Maldonado-Montalvo, *supra* (holding defendants responsible for damages caused by foreseeable acts of their coconspirators). The Government apparently agrees with this, as it objects to including the administrative costs of the aution in the loss calculation. See Objection No. 1 in the Addendum to the Presentence Report.

DeChristopher is not responsible for the governmental illegalities involved in the auction, which caused the Interior Department to eventually nullify the auction and withdraw many parcels from eligibility for bidding in future auctions. It is entirely appropriate for the Court to consider the government's illegal conduct involved in the later-nullified auction, in reducing the calculation of loss attributed to DeChristopher. See id. at 71-72 (recognizing that courts may depart downward to account for a victim's conduct which increases the loss).

As to the bids that were purchased and kept by the bidders, to the extent the bids may have increased as a result of DeChristopher's participation in the bidding process, DeChristopher actually made money for the federal government, perhaps more than $300,000, PSI 7. The bidders who bid on and won the parcels after DeChristopher's bidding were given the opportunity by BLM

4

officials to renege on their purchases, but opted not to, apparently recognizing that our cherished public lands are worth what they paid for them. DeChristopher is not responsible for their choices to stand by their bids. To the degree that DeChristopher won certain parcels that were later determined to be legally subject to auction in the future, he attempted to make the initial payment on these parcels but the government would not accept the payment. Where the cause of this loss is the purported victim's choice, the Court should not hold DeChristopher responsible. See id. Moreover, the parcels may be auctioned in the future, apparently in February of 2012. See http://utahlegals.com/notice.php?id=104757. The Court should not base a criminal sentence on speculation as to costs that might be incurred or profits that might result in the future as a result of DeChristopher's bids.

Because DeChristopher's actions and offenses of conviction caused no loss, the Court should adopt the guidelines alternative reflected in paragraphs 110 through 118 of the PSI.

II. DeChristopher Should Receive Credit for Acceptance of Responsibility.

5

While the issue of acceptance of responsibility is moot if the Court agrees that DeChristopher's crimes caused no loss, PSI paragraph 118, out of an abundance of caution, counsel for DeChristopher explain why he should qualify for acceptance of responsibility.

Criminal defendants have numerous Fifth, Sixth and Fourteenth Amendment rights to present their defenses. See, e.g., Crane v. Kentucky, 476 U.S. 683, 690 (1985). These rights would have little meaning if defendants were penalized for exercising them. See, e.g., Wilkie v. Robbins, 551 U.S. 537, 584 (2007) (discussing many cases demonstrating that if the exercise of various constitutional rights were penalized, this would render such rights "worthless").

United States Sentencing Guideline 3E1.1 recognizes that a defendant is normally entitled to a two point decrease of his offense level if he accepts responsibility. See id. Defendants who exercise their constitutional trial rights are entitled to this decrease if they go to trial for reasons other than contesting factual guilt, such as to preserve legal issues as to the applicability of the law to the facts, or as to the constitutionality of the law. See, e.g., Commentary n.2 to 3E1.1; United States v. Gauvin, 173 F.3d 798 (10th Cir. 1999) (affirming trial court's grant

6

of adjustment for acceptance in a case wherein the defendant went to trial to challenge the element of intent). The focus in such circumstances is on the defendant's pretrial statements and conduct. See, e.g. id. In Gauvin, the Tenth Circuit agreed with the trial court that the defendant's challenging an essential element of the charged offense in good faith should not disqualify him from the benefit of 3E1.1. Id., 173 F.3d at 806. Many commentators, practicing lawyers and judges have wondered why a defendant should be penalized for exercising their right to put the government to their proof. There is a right to a trial, not a right to a guilty plea or plea bargain, a point often argued by prosecutors.

Indicia of acceptance of responsibility are listed as follows in Comment 1 to 3E1.1:

> 1) Truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;
> 2) Voluntary termination or withdrawal from criminal conduct or associations;
> 3) Voluntary payment of restitution prior to adjudication of guilt;

4) Voluntary surrender to authorities promptly after commission of the offense;

5) Voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

6) Voluntary resignation from the office or position held during the commission of the offense;

7) Post-offense rehabilitative efforts (e.g., counseling or drug treatment); and

8) The Timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

DeChristopher should be granted the two level downward adjustment pursuant to 3E1.1, as he did not contest his factual guilt, but instead went to trial in a good faith effort to challenge the application of the law to his conduct, and to preserve his legal claims, such as his entitlement to present a necessity defense.

His conduct is fully consistent with the indicia of acceptance enumerated in the commentary note to 3E1.1. Immediately following his conduct, he forthrightly admitted to it when he willingly and candidly participated in the lengthy interview with Agent Love. Upon his release, he immediately contacted his friend, Michael Mielke, to begin gathering the funds necessary to make good on his bids. Through counsel, he made offers to make the initial payments on the leases. The Government rejected these offers for reasons never explained - perhaps because

8

the auction in which DeChristopher participated was later found to be illegal in various respects and was effectively nullified by the federal government. In his public statements, DeChristopher has consistently admitted to and accepted responsibility for his actions, despite his recognition that this might well land him in prison. Because DeChristopher's acceptance of responsibility has been timely, consistent, candid and thorough, the Court should grant him the two point adjustment suggested by the presentence report.

### III. CONSIDERATION OF THE FACTORS LISTED IN 3553 CONFIRMS THE PROPRIETY OF PROBATION.

Under the Sixth Amendment, as applied to the sentencing guidelines in United States v. Booker, 453 U.S. 220 (2005), this Court is not bound to follow the Federal Sentencing Guidelines. While the Court is to consult the Guidelines, and may not depart from them to an unreasonable degree, the Court has increased discretion to tailor sentences to the individual circumstances of a given case and a given defendant. United States v. Trujillo-Terrazas, 405 F.3d 814, 818 (10th Cir. 2005).

Aside from the Guidelines, the Court is to consider the factors set forth in 18 U.S.C.A. section 3553. Section 3553(a) provides:

9

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

    **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

    **(2)** the need for the sentence imposed--

        **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        **(B)** to afford adequate deterrence to criminal conduct;

        **(C)** to protect the public from further crimes of the defendant; and

        **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    **(3)** the kinds of sentences available;

    **(4)** the kinds of sentence and the sentencing range established for--

        **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

            **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

            **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

        **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

    **(5)** any pertinent policy statement--

        **(A)** issued by the Sentencing Commission pursuant to section

>994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
>**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>**(7)** the need to provide restitution to any victims of the offense.

As to the nature and circumstances of the offenses of conviction, DeChristopher's crimes were not calculated beforehand, but instead were the product of his idealism, impulsivity and profound fear for the future of our world environment. As DeChristopher explained, he went into the auction as a bidder because he believed this was the only way for him to enter the auction. He put the bidder card in his bag because this is how he carries things. He had no idea at the time that the card was necessary to participate in the auction -- something he had no intention of doing when he received the card and went into the auction. As the Court likely recalls, the recording of the auction is similarly reflective of the truth -- DeChristopher did not go into that auction with a plan to participate in the bidding, but only did so on impulse well after the auction began. His first parcel purchase was an accident. It was only after he resigned himself to his fate that

11

he began making additional purchases, putting himself at great risk in an effort to preserve some of our most cherished national lands and archeological treasures and the world environment. His foray into crime was very brief, particularly when considered in the larger context of his exemplary life. His crimes were not committed to harm anyone. Rather, he knowingly put himself at great risk, for the greater good of the world and all its inhabitants.

As detailed in the PSI, DeChristopher's history and characteristics are both outstanding, as exemplified by his excellence as a college student and his commitment to working with troubled youth. His candor in discussing his actions with Agent Love during the post-auction interrogation, despite his recognition of the peril he was in, again demonstrates his finely principled character.

In order to promote respect for the law, the Court's sentence should take into account the fact that DeChristopher's crimes were committed in a last ditch effort to halt the federal government's violation of its own laws designed to protect our environment, archeological treasures, and cultural artifacts. Particularly given the lawsuits over the auction and the Department of the Interior's nullification of the auction, the Court would be well within its discretion to temper the sentence of DeChristopher in light of the governmental corruption he was seeking to thwart

for the good of the planet.

The fact that the crimes he committed were so aberrant from his law abiding nature and life history before and since the crimes occurred confirms that the Court need not incarcerate DeChristopher in order to protect the public from future crimes or to deter him.  DeChristopher has become a very effective advocate for environmental causes without resorting to any law-breaking during the lengthy pendency of this case and is expected to comply fully with any conditions of probation the Court may select.

Respectfully submitted this __8th__ day of July, 2010.

                YENGICH, RICH & XAIZ
                Attorneys for Defendant

                By: /s/ Ronald J. Yengich
                     RONALD J. YENGICH
                     ELIZABETH HUNT
                     PATRICK A. SHEA P.C.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was efiled and served by electronic notice to all parties listed below on this 8th day of July, 2011:

CARLIE CHRISTENSEN, UNITED STATES ATTORNEY
JOHN W. HUBER, ASSISTANT UNITED STATES ATTORNEY
SCOTT B. ROMNEY, ASSISTANT UNITED STATES ATTORNEY

/s/ Myrleen Wright

14