CARLIE CHRISTENSEN, United States Attorney (No. 633)
JOHN W. HUBER, Assistant United States Attorney (No. 7226)
SCOTT B. ROMNEY, Assistant United States Attorney (No. 10270)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.  2:09 cr 183 DB |
| Plaintiff, | : | |
| | | SENTENCING MEMORANDUM |
| v. | : | |
| | : | Honorable DEE BENSON |
| TIM DeCHRISTOPHER, | | |
| | : | |
| Defendant. | | |
| | : | |
| | : | |

_____

The United States Attorney, by and through the undersigned Assistant United

States Attorneys, hereby submits this sentencing memorandum to assist the Court in

determining an appropriate sentence for the defendant.  Based upon Title 18 of the United

States Code, Section 3553(a), this Court should impose a significant term of

imprisonment to accomplish a fair and reasonable sentence in this matter.  In particular, a

1

term of imprisonment will (a) comport with the nature and circumstances of the offense

and the history and characteristics of the defendant; (b) reflect the seriousness of the

offense, promote respect for the law, and provide just punishment for the offense; (c)

afford adequate deterrence to criminal conduct; and (d) protect the public from further

crimes of the defendant.  The Court may also consider other aspects of the sentence,

including a fine and restitution.

> **A.      The Nature and Circumstances of the Offense and the
>           History and Characteristics of the Defendant**.

In determining an appropriate sentence to be imposed, one of the Court's

requirements is to "consider the nature and circumstances of the offense and the history

and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  To be sure, the

defendant's crimes are serious.  He lied, obstructed lawful government proceedings, and

caused extraordinary loss to others.  Unilaterally, he played out the parts of accuser, jury,

and judge as he determined the fate of the oil and gas lease auction and its intended

participants that day.

His spontaneous course of criminal conduct was neither necessary nor justified.

Rather, it was self-centered and juvenile, and lacked the fortitude and diligence that

would be characteristic of the very movement that he claimed to represent.  He left behind

the myriad legal alternatives available to address his concerns, and opted for on-the-spot

recklessness.  For example, he did not take the time to articulate reasoning in a filed

formal protest within the BLM proceedings.  He did not initiate or join a lawsuit to bring

to light perceived impropriety in a court of law.  Nor did he focus creativity and sacrifice

as others did in freely voicing their objections to the auction in the public forum.  These

lawful means and others most likely led to eventual cancellation of many of the parcels up

for auction that day.  It was not the defendant's crimes that effected such a change.

Nevertheless, since the day of his crimes, the defendant has championed and

marketed his course of criminal conduct as successful, necessary and all-American.  He

has encouraged and invited others to follow his path, and literally join him in jail by

committing criminal acts in the name of a movement.  Unapologetic, the defendant

publicly extols his acts of lying to the government, and obstructing proceedings

authorized by our elected representatives.

**B.      The Need to Reflect the Seriousness of the Offense,
       Promote Respect for the Law, and Provide Just
       Punishment for the Offense.**

The Court should also consider the need for the sentence "to reflect the seriousness

of the offense, to promote respect for the law, and to provide just punishment for the

offense."  18 U.S.C. § 3553(a)(2)(A).  These factors weigh in favor of a significant term

of imprisonment.

In the defendant's statements to his supporters and to the media, with his fist in the

air, he would have one believe that he had performed a great act of heroic defiance

worthy of pomp and circumstance.  On the other hand, in his sentencing memorandum —

when his liberty is on the line — he shies away from the impact of his crimes.  He claims

that his criminal acts caused "no loss" (D. Memo at 2), and that it was by "accident" (D.

Memo at 11) that he fell into this path of criminal behavior.

The Court is well aware of the facts that supported the guilty verdicts, and which

show the seriousness of the crime.  The defendant derailed the oil and gas lease auction in

one afternoon.  The auction was the culmination of months, if not years of BLM and other

agency preparation.  Of course, that work was funded by United States taxpayers.

Investors and businesses, too, expended considerable resources in preparation for and

participation in the auction.  The various money loss calculations probably give only

symbolic illustrations of the seriousness of the defendant's crimes, whether those losses

are for the $139,000 cost of the auction, the $1.8 million price of the successful fake bids,

or the $600,000 estimated loss by one businessman at the auction.  Nonetheless, they are

all accurate examples of how the defendant's conduct greatly impacted others.

A significant prison term will promote respect for the law.  This factor is perhaps

most telling as it applies to the defendant's crimes where his acts, including post-offense

conduct, champion disrespect for the rule of law.  He lied to government officials to get a

bidder card and the authority to participate in the auction, and he obstructed the rules and

laws governing the event.  Since then, he has encouraged others to act similarly and join

him outside the bounds of the law.  Then, there are the pre-trial efforts linked to the

defendant focused on tainting the prospective jurors, and persuading them to abandon or

ignore rules and laws governing their service.  The Court should have little tolerance for

this behavior, and should fashion a penalty that promotes respect for the law, and justifies law-abiding society's reliance on the rule of law for protection and order.

To be sure, penalty and punishment are central to the purposes of sentencing. This premise is basic to our society, as one's choices and actions should always have consequences. The expectations are that the punishment should not be too harsh, and it should not be too lenient. Probation or a nominal jail sentence would be as unjust in this case as would be the maximum term of imprisonment. The actual term imposed should be one of significant consequence.

**C.      The Need to Afford Adequate Deterrence to Criminal Conduct.**

As opposed to preventing this particular defendant from committing further crimes (see discussion below), the sentence should be crafted "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). Based upon the level of media attention at the trial and pre-trial hearings, the Court should presume that many are watching to see the eventual sentence for the defendant's conduct. Among the many listening to the Court's sentence, there are those few who are considering the defendant's invitation and encouragement to join him outside the bounds of law, and inside jail. Accordingly, the defendant's sentence should effectively communicate that similar acts will have definite consequences. To be sure, a federal prison term here will deter others from entering a path of criminal behavior.

###### D.    The Need to Protect the Public from Further Crimes of the Defendant.

The defendant has remained a vocal champion of using criminal means to advance

a cause.  Accordingly, the Court should consider how the sentence will "protect the public

from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).  There are two aspects

to this factor as it applies to the defendant.  First, the Court should use a term of

imprisonment to immediately remove the defendant from efforts to organize criminal acts

in the name of a cause.  And second, the Court should consider the long term impact that

a term of imprisonment will have on the defendant's future behavior once released or off

supervision.

The defendant's criminal acts have brought him considerable notoriety.  For the

duration of this prosecution, he has garnered audiences which include a fringe element

that promotes criminal conduct to advance a cause.  An immediate term of significant

imprisonment will negate his participation with those fringe elements promoting criminal

acts, and assuredly protect the law-abiding public.

For the remainder of the defendant's life, whether he admits it or not, he will

measure the impact of this sentence in his future decisions.  A significant, just sentence

will serve as a benchmark in his life as he weighs out the consequences for committing

criminal acts.  Such a sentence will protect the law-abiding public for years to come.

On the other hand, a sentence of too little consequence may have the opposite

effect.  His criminal acts have brought the defendant considerable notoriety and fame

within a certain segment of society.  As that attention wanes, the defendant may be tempted to reignite his relevance in that segment with criminal acts.  An insignificant sentence may then appear as a reasonable price for popularity.

> ### E.      Fine and Restitution.

The Court should consider the kinds of sentences available and the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a)(3) and (7).  The defendant has collected a significant amount of monetary donations, as described in the pre-sentence report.  The United States understands that these donations were solicited in the name of legal fees and costs.  Nevertheless, defense counsel have previously represented that they have donated their service in whole or in part.  Accordingly, the monetary collections by the defendant appear to be a windfall to him for the crimes he committed.  Meanwhile the government has suffered injury at the defendant's hands.  The defendant has the ability to pay a fine and should do so.  The Court should order a fine in an amount to represent the damage done to the government.  The Court could alternatively issue such an order based upon its authority to order restitution for the damages caused in derailing the oil and gas lease auction, estimated to be $139,000.

> ## Conclusion

The defendant's crimes are serious.  Probation, or a nominal term of imprisonment will not comply with the sentencing purposes set forth in Section 3553(a).  More importantly, such a sentence would not satisfy the interests of justice.  The rule of law is

the bedrock of our civilized society, not acts of "civil disobedience" committed in the

name of the cause of the day.  A significant term of imprisonment will underscore this

truth for the defendant and the community.

        SUBMITTED this 19th day of July, 2011.

                                        CARLIE CHRISTENSEN
                                        United States Attorney


                                        /s/ John W. Huber
                                        John W. Huber
                                        Assistant United States Attorney


                                        /s/ Scott B. Romney
                                        Scott B. Romney
                                        Assistant United States Attorney